**Eugene P. REGINELLI, Plaintiff,**

v.

**MOTION INDUSTRIES, INC., Defendant.**

**No. LR–C–96–568.**

United States District Court,
E.D. Arkansas,
Western Division.

Dec. 19, 1997.

**1138**

Jack Wagoner, III, Little Rock, AR, for Plaintiff.

Michael S. Moore, Friday, Eldredge & Clark, Little Rock, AR, J. Chadwick Hatmaker, Robert N. Godfrey, Smith, Currie & Hancock, Atlanta, GA, for Defendant.

## ORDER

HENRY WOODS, District Judge.

The defendant has renewed its post-trial Motion for Judgment as a Matter of Law and has filed a Motion for New Trial. The plaintiff has filed a Motion for Judgment. All responses are now submitted, and these motions are ripe for decision.

■ "[J]udgment as a matter of law is proper when the record contains no proof beyond speculation to support the verdict."

*Larson v. Miller,* 76 F.3d 1446, 1452 (8th Cir.1996) (en banc). "The question is a legal one, whether there is sufficient evidence to support a jury verdict." *White v. Pence,* 961 F.2d 776, 779 (8th Cir.1992). The court must "analyze the evidence in a light most favorable to the prevailing party and must not engage in a weighing or evaluation of the evidence or consider questions of credibility." *Id.*

The plaintiff in this case alleged that he was retaliated against for reporting what he reasonably believed to be sexual harassment of defendant's female employees by the branch manager, Donnie Adair. The plaintiff had the burden of proving that he was engaged in protected activity; that he suffered adverse employment action; and that a causal connection existed between the plaintiff's protected activity and the adverse employment action. *Wentz v. Maryland Casualty Co.,* 869 F.2d 1153, 1155 (8th Cir.1989).

In this case, the plaintiff's protected activity was confronting Adair about Adair's purported affair with a female subordinate, Karen Tomboli, and reporting Adair's alleged misconduct concerning Tomboli and another female employee, Tina Bateman, to Adair's supervisors. After Reginelli confronted Adair and reported Adair's activities to Adair's supervisors, Adair was discharged after refusing to relocate to another office and take a demotion. The defendant contended at trial that the adverse job action was a result of disruption Reginelli was causing in the workplace, and not a result of his reporting Adair's alleged misconduct. The jury found that Reginelli was discharged because of his opposition to conduct he reasonably believed to be in violation of Title VII and awarded him back pay and compensatory damages.

■ Defendant contends that it is entitled to judgment as a matter of law because the plaintiff did not reasonably believe that he was reporting sexual harassment prohibited by Title VII. The defendant further argues that some federal courts have afforded less protection to one opposing misconduct prohibited by Title VII, such as the plaintiff in this case, than to the actual victims of such misconduct. *See e.g., Booker v. Brown &*

*Williamson Tobacco Co., Inc.,* 879 F.2d 1304, 1312 (6th Cir.1989). There is no dispute that Title VII does not protect all activity in opposition to suspected misconduct. There is, however, nothing in the record in this case to indicate that Reginelli's actions in opposition to alleged misconduct was anything more than reporting or complaining about the suspected misconduct through the defendant's chain of command, beginning with the branch office manager, Donnie Adair. There is no evidence that Reginelli's actions in opposing the conduct of Adair was so disruptive as to take him outside the protection of "opposition clause" of Title VII.

The defendant next argues that Reginelli could not have reasonably believed that he was complaining of Title VII violations because no one had filed a report or complaint of sexual harassment against Adair when the plaintiff complained of Adair's conduct. The defendant misses the point. Tina Bateman, a female employee allegedly harassed by Adair, had told Reginelli about improper sexual advances Adair had made to her, and further had complained that apparently one had to "sleep with the boss to get ahead" in defendant's company. Reginelli was Bateman's supervisor (as was Adair). Although Bateman asked Reginelli not to file a formal complaint on her behalf, the fact remains that Bateman did informally complain to her supervisor, Reginelli, about the inappropriate sexual advances of Adair.

■ The Title VII prohibition against retaliation, "is not confined to situations in which the parties are engaged in formal proceedings, but rather extends to forbid 'discrimination against applicants or employees for attempting to protest or correct allegedly discriminatory conditions of employment.' " *Hearn v. R.R. Donnelley & Sons Co.,* 460 F.Supp. 546, 548 (N.D.Ill.1978) *quoting McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 796, 93 S.Ct. 1817, 1821, 36 L.Ed.2d 668 (1973). This is consistent with the underlying purpose of Title VII to resolve employment discrimination disputes short of formal litigation where possible. Informal action taken to protest unlawful treatment is surely protected "opposition" activity, so long as it is not so unreasonably disruptive as to lose the protection of Title VII.

Defendant notes that the alleged sexual relationship between Adair and female employee Karen Tomboli, if it existed at all (which the defendant, Adair, and Tomboli steadfastly denied), was consensual and, thus, was not a violation of Title VII. According to the defendant, Reginelli was not reporting a suspected Title VII violation, but was merely an officious intermeddler, insinuating himself into a situation that was none of his business.

This Court cannot say, as a matter of law, that it was unreasonable of Reginelli to suspect that a sexual relationship between the branch manager and a subordinate female employee was entirely consensual, particularly in the light of the fact that another female employee, Tina Bateman, had already complained to Reginelli about Adair's unwelcome sexual advances.

The defendant relies upon the fact that Bateman denied to defendant's investigators that Adair had made unwelcome sexual advances, this is irrelevant. The defendant must bear responsibility for the actions of Adair who, as branch manager, *was* the company, for purposes of Title VII. His actions were, in effect, the actions of the company. Likewise, the fact that Reginelli did not go over Adair's head to report the alleged misconduct from May until November, while it may have been unwise, does not defeat the claim.

The testimony at trial was that Reginelli confronted Adair in July, shortly after he learned of Adair's improper advances to Bateman and the alleged sexual relationship with Tomboli. It was Reginelli's contention that as a result of confronting (reporting) the perceived problem to Adair, he began suffering adverse employment actions at the hands of Adair. The jury was permitted to hear that Reginelli waited from May or June until November to report the suspected misconduct to Adair's supervisors. The jury could have considered this as evidence that Reginelli did not reasonably believe that Adair's conduct was violating protected rights, but the evidence certainly did not conclusively require that inference. There was other testimony, which the jury could have believed, that Reginelli first tried to solve the situation

with his immediate supervisor, Adair, and only went over Adair's head when he felt it was futile to continue to work with Adair. Although Adair denied having had certain conversations with Reginelli, the jury was free to believe Reginelli's testimony that at one point Adair admitted his misconduct to Reginelli and apologized to Reginelli for retaliating against him in the weeks following the July confrontation. If the jury believed this testimony, it could reasonably have inferred that Reginelli's delay in going over Adair's head was prompted by Adair's promise to alter his behavior.

Viewing the evidence in the light most favorable to the plaintiff, and without engaging in a weighing of the evidence or considering questions of credibility, the Court cannot grant the defendants' motion for judgment as a matter of law. The jury reached a reasonable and permissible verdict.

The Motion for Judgment as a Matter of Law as to the state contract claim must also be denied. There was ample evidence to support the jury verdict. The jury found that Reginelli suffered retaliation in violation of Title VII; such action is contrary to public policy in Arkansas. Even if this were not so, there was sufficient evidence, including testimony of the defendant's agents, that Reginelli could only have been fired for cause under the terms of the personnel policy of the company.

 The defendants have moved, in the alternative, for a new trial. "In determining whether a verdict is against the weight of the evidence, the trial court can rely on its own reading of the evidence—it can weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." *Id., quoting Ryan v. McDonough Power Equipment,* 734 F.2d 385, 387 (8th Cir.1984).

The Court of Appeals for the Eighth Circuit has held that whether the "verbal formulation of the quantum of weight to support the grant of a new trial ... [is] 'clear weight,' 'overwhelming weight,' or 'great weight,' ... the ultimate test [is] whether there [has] been a miscarriage of justice." *White,* 961 F.2d at 780.

 The defendant argues that the amount of damages by the jury was so exces-

sive as to indicate that the award was based on passion or prejudice. The amount of back pay awarded to the plaintiff was well within the bounds supported by the evidence, even though it exceeded the amount testified to by the plaintiff's expert. The expert made it clear that his estimate of $194,471 in lost back pay was a conservative estimate and did not take into account increases in commissions Reginelli might have continued to earn. *See Norton v. Caremark, Inc.,* 20 F.3d 330 (8th Cir.1994). The jury's award of $214,471 is within the boundaries of a reasonable award of back pay. The plaintiff has conceded that the back pay should be reduced by $82,210, the amount of lost pension benefits testified to by the plaintiff's expert. The plaintiff concedes that this amount is not properly considered back pay. Thus, the amount of back pay should be $131,790.

 The jury also awarded Reginelli $1.1 million for emotional pain and suffering. This amount does exceed the statutory cap of $300,000 and the judgment will reflect this reduction. *See* 42 U.S.C. § 1981a. The plaintiff, as well as his wife, testified as to how and to what extent the defendant's conduct affected Reginelli's emotional and physical health. The evidence presented supports an award of $300,000. The defendant cites *Delph v. Dr Pepper Bottling Co.,* 130 F.3d 349 (8th Cir.1997), for the proposition that $300,000 is excessive for emotional distress and physical ailments attributable to the defendant's misconduct. The Court finds the situation in this case distinguishable from that in *Delph.* In *Delph,* the Court of Appeals found the plaintiff's emotional and physical complaints to be "vague and ill-defined" and "not characterized as especially intense." *Id.,* 130 F.3d at 357.

To the contrary, there was extensive testimony in this case indicating that Reginelli suffered serious depression and intense distress which affected not only him but his wife and young children as well. Reginelli worked for the defendant virtually from the time he finished high school, for fifteen years, until his discharge. At the time he confronted Adair, he had worked his way up in the company to a management position with a substantial salary. His work record

for the company had been exemplary, as reflected in his job performance evaluations (including those evaluations made by Adair prior to the confrontation about sexual misconduct). In sum, the Court finds that $300,000 is reasonable and fair under the circumstances presented in this case, and declines to reduce the award further than to the $300,000 cap imposed by statute. The Court declines the adopt the plaintiff's suggestion that the $300,000 cap should apply to each instance of retaliation.

Accordingly, the defendant's Motion for Judgment as a Matter of Law or, in the alternative for New Trial, is denied.

The plaintiff's Motion for Equitable Relief and Judgment is granted. The defendant argues that the plaintiff should receive neither reinstatement nor front pay. The parties are in agreement that reinstatement is not appropriate in this case, and the Court agrees. The plaintiff is, however, entitled to front pay. From the testimony presented at trial, the Court concludes that $432,852 is the appropriate amount of front pay to be awarded. The plaintiff is also entitled equitable relief for the present value of the lost pension in the amount of $82,210, and for the value of lost future 401K benefits in the amount of $6,262. Thus, judgment will be entered for the plaintiff in the amount of $521,324 in equitable relief, plus $131,790 in back pay, plus $300,000 in compensatory damages for emotional and physical pain and suffering, for a total of $953,214. In addition, the plaintiff is entitled to reasonable costs and attorney's fees.

A separate judgment will be entered in accordance with this Order.

### JUDGMENT

In accordance with the jury verdict rendered in this case, and the Order entered this day, the plaintiff is hereby granted judgment against the defendant as follows:

1. Back pay in the amount of $131,790;
2. Compensatory damages in the amount of $300,000;
3. Front pay in the amount of $432,852;
4. Lost pension benefits in the amount of $82,210;
5. Lost future 401K benefits in the amount $6,262; and

6. Reasonable costs and attorney's fees.

Accordingly, the plaintiff is awarded a total of $953,214 with post-judgment interest to accrue at the rate of 5.42% per annum, plus costs and attorney's fees.